IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-02845-MSK-MJW

CIENA COMMUNICATIONS, INC.,

       Plaintiff,

v.

JAMES J. NACHAZEL, and
ALCATEL-LUCENT USA INC.,

       Defendants.

---

**OPINION AND ORDER GRANTING, IN PART, MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to Defendant Alcatel-Lucent USA, Inc.'s ("Alcatel") Motion to Dismiss **(# 15)**, Plaintiff Ciena Communications, Inc.'s ("Ciena") response **(# 22)**, and Alcatel's reply **(# 28)**.

## FACTS

According to the Complaint **(# 1)**, Defendat Nachazel was formerly employed by Ciena as an Account Vice President, primarily responsible for managing Ciena's accounts with AT&T. As such, Mr. Nachazel "knows virtually every trade secret that Ciena possesses about its products sold to AT&T." In November 2009, Mr. Nachazel resigned from Ciena and took a job with Alcatel, "one of Ciena's major competitors," where Mr. Nachazel will "serve in a senior capacity on [Alcatel's] AT&T account team." When he left Ciena, Mr. Nachazel "secretly made a duplicate of his computer hard drive," retaining possession of "hundreds of confidential and proprietary documents" belonging to Ciena.

Ciena contends that Mr. Nachazel's decision to accept employment with Alcatel places him in violation of a contract he had with Ciena. That contract provides, among other things, that for a period of 12 months from the end of his employment with Ciena, Mr. Nachazel will not obtain employment with "any business . . . whose products or activities compete, in whole or in part, with the products or activities" of Ciena, will not solicit Ciena's customers, and will not disclose Ciena's trade secrets.

Ciena asserts eight claims in this action: (i) breach of contract against Mr. Nachazel; (ii) violation of the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101 *et seq.*, against both Defendants, in that "[Mr.] Nachazel and [Alcatel] have misappropriated, or threaten to misappropriate, Ciena's trade secrets"; (iii) tortious interference with contract, apparently asserted under Colorado common law, against Alcatel, in that Alcatel has caused Mr. Nachazel to breach his contract with Ciena; (iv) tortious interference with contract and prospective business advantage, apparently asserted under Colorado common law, against both Defendants, in that "[Mr.] Nachazel and [Alcatel] have engaged or threaten to engage in wrongful acts which tortiously interfere with Ciena's" existing and prospective contracual and business relations with its customers; (v) breach of contract against Mr. Nachazel arising from a separate relocation agreement; (vi) breach of fiduciary duty against Mr. Nachazel; (vii) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, against Mr. Nachazel; and (viii) violation of the Stored Communication Act, 18 U.S.C. § 2701 *et seq.*, against Mr. Nachazel.

Alcatel now moves[1] **(# 15)** to dismiss the three claims asserted against it, arguing that: (i)

---

[1] Alcatel's motion does not conform to the format required of dispositive motions under MSK Practice Standard V.I.2.c. Failure to comply with the Practice Standards in future motions will result in denial of the motion without consideration of its merits.

with regard to the tortious interference with contract claim, Ciena cannot establish that there was a valid and enforceable contract between itself and Mr. Nachazel, as the covenant not to compete is unenforceable under both Maryland and Colorado law; (ii) with regard to the statutory Trade Secrets Act claim, Ciena has not adequately pled Alcatel's actual or threatened misappropriation of the trade secrets; and (iii) with regard to the tortious interference with contracts and prospective advantage claim(s), Ciena has failed to allege facts showing any actual interference with a contract or prospective advantage, and Ciena's claim is duplicative of, and thus preempted by, the Trade Secrets Act claim.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941

(10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified what constitutes a "well-pleaded fact" for purposes of a Rule 12 analysis. A pleader is not required to set forth "detailed factual allegations," but must offer more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. The cases make clear that it is <u>facts</u>, not conclusions, that must be pled; "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," including "legal conclusion[s] couched as a factual allegation." *Id.* at 1949-50. Moreover, the facts pled must demonstrate a "plausible" claim, that is, one in which the pleader has shown more than just an abstract "possibility" that the defendant has engaged in actionable misconduct.[2] *Id.* One way in which the Court might conduct its analysis is to "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and disregard them. Then, faced with only well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an

---

[2]The Supreme Court took pains to ensure that the word "plausible" is understood to mean that the plaintiff has a demonstrable and concrete belief that a wrong has been committed and the defendant is the person responsible, as opposed to a set of facts in which a wrong might possibly and hypothetically be ascertained, and the defendant might, hypothetically, be a person who might have been responsible for that wrong. For example, in *Twombly*, the Court observed that the plaintiff in an antitrust case had sufficiently pled as a fact that two defendants had engaged in "parallel behavior." However, it found that while parallel conduct <u>might</u> be consistent with the required element of an agreement between the two defendants, "it was not only compatible with, but indeed was more likely explained by, lawful unchoreographed free-market behavior." 550 U.S. at 567. Thus, "the well-pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an unlawful agreement." *Id.* at 570.
   Cases such as *Twombly* and *Iqbal* make clear that the "plausibility" requirement is not an invitation to this Court to speculate as to whether well-pleaded facts alleged by the pleader are likely to be proven true or not. In this sense, "plausible" is not the synonym of "believable."

4

entitlement to relief." *Id.* at 1950.

### B. Tortious interference with contract claim

Alcatel argues that it is entitled to dismissal of Ciena's tortious interference with contract claim because the covenant not to compete found in the contract between Mr. Nachazel and Ciena is unenforceable in both Maryland and Colorado. (Alcatel does not take a position on which state's law applies, nor does Ciena in response.) Ciena responds that the breach of contract claim relies on numerous contractual provisions, not just the covenant not to compete, that Alcatel is alleged to have procured Mr. Nachazel to breach.

The Court declines to address Alcatel's motion with regard to this claim for several reasons. First, and perhaps most importantly, Ciena contends that the claim encompasses numerous contractual provisions that Alcatel induced Mr. Nachazel to breach, not just the covenant not to compete. Ciena points out that the contract also contains provisions requiring Mr. Nachazel to preserve the confidentiality of Ciena's trade secrets, and to refrain from soliciting Ciena's customers for a certain period of time, among others, and that the tortious interference with contract claim encompasses Alcatel inducing Mr. Nachazel to breach these contractual provisions as well. Alcatel's reply brief does not directly respond to this argument, save perhaps a passing mention that the tortious interference claim should be dismissed "to the extent it relies on the Non-Compete Covenant."[3] At this stage of the litigation, there is no value in subdividing the claim into its component subclaims simply to address the viability of the claim as it relates to one operative contractual clause of many. Factual discovery on the claim as

---

[3]Nevertheless, the relief requested by Alcatel in its reply brief is "to dismiss the Complaint in its entirety and dismiss [Alcatel] from this action with prejudice." Obviously, that relief is not available if the tortious interference with contract claim admittedly remains viable with regard to contractual provisions other than the non-compete covenant.

it relates to the uncontested contractual provisions – most notably, the clause prohibiting Mr. Nachazel from soliciting Ciena's clients – will largely overlap the discovery that would be conducted with regard to Alcatel's alleged inducement of Mr. Nachazel to breach the non-compete clause, as the two clauses are similar in purpose and operation. Thus, there is little utility in the Court addressing the claim only insofar as it relates to the non-compete clause at this time.

Second, the Court finds that, notwithstanding the parties' efforts, the matter is not fully briefed for the Court. Both parties confess some uncertainty as to whether intrepretation of the contract is govered by Maryland or Colorado law, yet neither party has adequately addressed the choice of laws analysis by which the Court will determine which state's laws govern. Resolving this issue as the parties have – by presenting alternative arguments addressing the claim under both state's laws – is an unsatisfactory approach, particularly where (for the reason set forth below, among others) the result might differ depending on which state's law governs.

Finally, the Court observes that, at least with regard to the validity of the contract were the Court to apply Maryland law, Alcatel's argument that the non-compete clause is invalid depends on extrinsic evidence not properly before the Court on a Fed. R. Civ. P. 12(b)(6) motion. The crux of Alcatel's argument is that the non-compete clause is overbroad (and thus unenforcible) is that Ciena is engaged in the sale of products relating to the "transport" of telecommunications traffic, while Alcatel is involved with "routing" of traffic, and that, armed with an understanding of how those terms are used in the industry, the Court would understand that the non-compete clause is overbroad under Maryland law.[4]   On a Rule 12(b)(6) motion, the

---

[4]Alcatel explains that, in industry terms, "routing" both encompasses and exceeds simple "transport"; thus, Alcatel's business activities are broader than Ciena's. Alcatel concludes that

6

Court may consider only the facts asserted on the face of the Complaint or, here, the face of the parties' contract. Although parties are entitled to define their contractual obligations by reference to industry jargon or non-standard definitions of certain terms, when they do so, extrinsic evidence will be necessary to ascertain the meaning that the parties intended those terms to bear. *See e.g. Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 792-93 (Colo. App. 2001), *abrogated on other grounds by Ingold v. AIMCO/Bluffs, LLC Apartments,* 159 P.3d 116 (Colo. 2007). But such extrinsic evidence is nor properly before the Court on a Rule 12 motion. Thus, to the extent that Alcatel argues that the Court must go beyond the plain language of the non-compete clause to ascertain its overbreadth under Maryland law, that argument must await a time in which extrinsic evidence demonstrating the true meaning of the parties' language can be considered.

Accordingly, the Court finds that Alcatel's motion to dismiss the tortious interference with contract claim is not properly before the Court, and the Court declines to reach its merits.

**C. Uniform Trade Secrets Act claim**

Ciena's second claim is premised on the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101 *et seq.* That statute provides for a suit for damages upon a "misappropriation" of "trade secrets." C.R.S. § 7-74-104(1). "Misappropriation" has a somewhat complex statutory definition, but generally, is defined as "acquisition," "disclosure," or "use" of a trade secret that was obtained through improper means. C.R.S. § 7-74-102(2).

---

interpreting Mr. Nachazel's covenant not to compete to completely prohibit him from joining Alcatel would prevent Alcatel from putting him to work on those (non-"transport" routing) aspects of the business that exceed the narrower scope of Ciena's operations. In these aspects of Alcatel's business, Mr. Nachazel would not be in "competition" with Ciena, and thus, the non-compete clause is overbroad in the restraints it places upon Mr. Nachazel.

Alcatel argues that Ciena has not adequately alleged facts that would show that Alcatel "misappropriated" Ciena's trade secrets through Mr. Nachazel. The argument is well-taken. Although Ciena's Complaint is lengthy, its factual allegations regarding Alcatel's actual acquisition or use of Ciena's trade secrets is brief and entirely conclusory. The Complaint alleges only that "[Mr.] Nachazel and [Alcatel] have misappropriated, or threaten to misappropriate, Ciena's trade secrets for the purpose of using and exploiting such information . . ." *Complaint*, ¶ 70. This is a conclusion; it does not explain what specific facts that have led Ciena to the conclusion that Alcatel has misappropriated or threatens to misappropriate the trade secrets – *e.g.* that Alcatel has begun contacting AT&T representatives that Ciena previously had exclusive contact with; that Alcatel has produced product literature comparing its products to Ciena's using information that was previously only known inside Ciena, etc. As the Supreme Court makes clear in *Twombly* and *Iqbal*, a plaintiff must plead <u>facts</u>, not conclusions, in order to avoid dismissal under Rule 12(b)(6).

Ciena offers two arguments in support of its contention that it has adequately pled misappropriation. First, it contends that Mr. Nachazel's acquisition and possession of Ciena's trade secrets can be "imputed" to Alcatel by virtue of the fact that Alcatel hired Mr. Nachazel as a management-level employee. Ciena explains that "when an agent of a corporation misappropriates information and possesses that information in his role with a new employer, the new employer has effectively misappropriated the information." *Citing In re Stat-Tech Sec. Litig.*, 905 F.Supp. 1416, 1422 (D. Colo. 1995). *Stat-Tech* does not stand for this proposition; it simply states the unremarkable proposition that, in general, "actions of corporate officers and

directors are attributable to the corporate entity."[5] *Id.* Ciena does not cite, and this Court is not aware of, any authority that actually establishes the principle articulated by Ciena. Indeed, such an absolute rule – essentially imposing strict liability on a corporation that hires a person possessing others' trade secrets – is contrary to the very language of the Uniform Trade Secrets Act. The Act requires that the person accused of misappropriation both "possess a trade secret" and "kn[o]w or should [know] that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chemical Indust.*, 9 F.3d 823, 847 (10th Cir. 1993). An employer who is unaware of an employees' misappropriation of anothers' trade secret would not be liable under this paradigm, nor would an employer who knows that its employee has pilfered anothers' trade secrets but who undertakes scrupulous efforts to ensure that the employee's knowledge of the trade secret is not put to use by the employer.[6] Thus, in the absence of specific factual averments showing Alcatel's "misappropriation" of Ciena's secrets, this Court cannot accept Ciena's argument that the Court should simply and reflexively impute Mr. Nachazel's improper

---

[5] Interestingly, *Stat-Tech* explains that an exception to this rule exists where "an agent acts adversely to his principal." *Id.* Arguably, Mr. Nachazel's acquisition and retention of Ciena's trade secrets are acts that are adverse to Alcatel's legal interests, and thus, *Stat-Tech* would suggest that Alcatel <u>cannot</u> be bound by Mr. Nachazel's actions in this regard.

[6] The latter proposition is the premise underlying the "inevitable discovery" doctrine, which sometimes allows victims of trade secret theft to argue that, notwithstanding efforts made by a new employer to wall off an employee's knowledge of the victim's secrets, the secret information will "inevitably" leak out and be used to the employer's advantage. *See generally PepsiCo v. Redmond*, 54 F.3d 1262, 1270-71 (7th Cir. 1995) (contrasting cases in which employers avoided liability for the employee's possession of anothers' trade secrets). Ciena expressly disclaims any intention of invoking the "inevitable discovery" doctrine in this case.

The Court notes, without making any findings, that Alcatel has posited one way in which it can employ Mr. Nachazel's experience and expertise without making use of his knowledge of Ciena's trade secrets. If Alcatel is correct that its activities in the "routing" portion of the industry involve activities where it does not compete against Ciena for AT&T's business, it may be that Mr. Nachazel can work in the non-"transport" aspects of "routing" for Alcatel without harming Ciena.

acquisition of Ciena's trade secrets to Alcatel.

Ciena's second argument is that the Uniform Trade Secrets Act permits suit for either actual or "threatened" misappropriation. The Act contemplates that "temporary and final injunctions . . . may be granted . . . to prevent or restrain actual or threatened misappropriation of a trade secret." C.R.S. § 7-74-103. Assuming, without necessarily finding, that it is therefore sufficient to state a claim under the Act by simply asserting facts showing "threatened" misappropriation, the Court nevertheless finds that Ciena has not done so. Once again, as discussed above, Ciena's only assertion regarding Alctael's use or threatened use of Mr. Nachazel's pilfered information is Paragraph 70 of the Complaint, which is entirely conclusory.[7] Without assertions of <u>fact</u> from which the Court could join in Ciena's conclusions that Alcatel was threatening to make use of Mr. Nachazel's knowledge of Ciena's trade secrets, Ciena has failed to adequately plead a claim under the Uniform Trade Secrets Act.

**D. Tortious interference with contracts and prospective advantages**

Ciena's final claim against Alcatel is a hybrid claim, asserting that Alctael has used Mr. Nachazel's knowledge to interfere with Ciena's current and prospective relations with its

---

[7]Ciena's citation to *Xantrex Technology Inc. v. Advanced Energy* ____, 2008 WL 2185882 (D. Colo. May 23, 2008) (unpublished), is unavailing. There, the court reasoned that "to make a claim of threatened misappropriation, whether a theory of inevitable disclosure or otherwise, the party must establish more than the existence of generalized trade secrets and competitor's employment of the party's former employee who has knowledge of trade secrets." The court went on to find that evidence in a preliminary injunction hearing showed a threatened misappropriation when the employee possessing Xantrex's trade secrets actually participated in "revising" new products for one of Xantrex's competitors. *Id.* at *19. Because *Xantrex* does not purport to describe what must be pled to allege threatened misrepresentation – rather than merely describing what is <u>insufficient</u> to plead a threat – it is not helpful in this context. Moreover, the full factual record in *Xantrex*, including evidence that strongly suggested that the employee was indeed using Xantrex's trade secrets to assist the competitor, places the case in a radically different factual posture than this case, where Alcatel's "threatened" use of Ciena's trade secrets is apparently entirely hypothetical and asserted by Ciena only in conclusory terms.

10

customers. Except in one respect, the elements of claims for tortious interference with contract and interference with prospective economic advantage are the same; the plaintiff must allege: (i) it had either a valid existing contract with a third party or that it expected to enter into a contract with a third party; (ii) the defendant induced or otherwise caused the third party to breach the contract or not enter into the contractual relation; and (iii) the defendant did so intentionally and via improper means. *Harris Group, Inc. v. Robinson* 209 P.3d 1188, 1195-96 (Colo. App. 2009).

Alcatel argues that Ciena has failed to allege facts showing that Ciena had contracts or expected to enter into contracts with third parties and that Alcatel caused those third parties not to enter into or perform under such contracts. There are allegations in the Complaint that are sufficient to allege that Ciena has or expects to have contracts with AT&T, thus satisfying the first element of the claim. *Docket # 1, ¶ 2, 4*. However, the Complaint contains no specific factual allegations indicating that Alcatel has induced AT&T to breach any existing contract with Ciena or to refrain from enter into an anticipated contract. Once again, the only allegation in the Complaint to this effect is entirely conclusory: "[Mr.] Nachazel and [Alcatel] have engaged or threaten to engage in wrongful acts which tortiously inference with Ciena's contracts and its prospective business advantages with its customers and potential customers." *Id.*, ¶ 89. This is no more than a "formulaic recitation of the recitation of the elements" of the claim, which *Twombly* makes clear is insufficient to overcome a Rule 12 motion.

Ciena responds that it has alleged that: (i) Mr. Nachazel knew of its trade secrets, especially regarding AT&T; (ii) that Alcatel is a competitor of Ciena; (iii) that Mr. Nachazel was a key element of Ciena's work with AT&T; (iv) that AT&T is also an important customer of Alcatel; and (v) that Alcatel hired Mr. Nachazel knowing that it would violate Mr. Nachazel's

11

contracts with Ciena. From this, Ciena argues that "it is a virtually ineluctable conclusion that Alcatel is attempting to interfere through improper means with Ciena's contracts and business relationship with AT&T." Even taking these facts as true, Ciena has not alleged that any of its current or prospective customers have <u>actually</u> refused to enter into or perform a contract with Ciena. In this respect, the tortious interference claims in the Complaint are premature and thus subject to dismissal without prejudice.

## CONCLUSION

For the foregoing reasons, Alcatel's Motion to Dismiss **(# 15)** is **GRANTED I N PART**, insofar as Ciena's claims for violation of the Colorado Uniform Trade Secrets Act and claims for tortious interference with contractual relations (as relating to Ciena's customers) and tortious interference with prospective economic advantage fail to state a claim under Rule 12(b)(6) and are thus **DISMISSED** without prejudice,[8] and **DENIED IN PART**, insofar as the Court declines

---

[8]Dismissals under Rule 12(b)(6) may, in appropriate circumstances, warrant granting the pleading party leave to amend to correct any defects. However, because the deadline for amendment of pleadings in the Scheduling Order **(# 31)** has passed, the Court does not *sua sponte* grant Ciena leave to amend the Complaint. Should Ciena believe that it can both replead so as to correct the defects identified herein and show good cause for modifying the deadline for amendment of pleadings in the Scheduling Order, it may file a motion for leave to amend the Complaint.

to dismiss Ciena's claim for tortiout interference with contract (as relating to Mr. Nachazel's contract with Ciena).

Dated this 30th day of August, 2010

**BY THE COURT:**

Marcia S. Krieger
United States District Judge